IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

EDWARD HARMON,

                Plaintiff,

v.                                              CIVIL ACTION NO. 2:11-cv-00334

VIRTUOSO SOURCING GROUP LLC,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiff's motion for default judgment [Docket 8]. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion.

*I. BACKGROUND*

According to the Complaint, in the spring of 2011, Defendant, a Colorado-based debt collection agency, through its agents, telephoned Plaintiff at his Charleston, West Virginia home two to three times a day demanding payment of a debt. (Docket 1, ¶¶ 6, 8, 9-11.) On April 9, 2011, Plaintiff telephoned Defendant, asked it to stop calling, instructed it to communicate with him only in writing, and advised Defendant that he could not afford to make any payments at that time. (*Id*., ¶12.) Defendant's agent allegedly informed Plaintiff that additional fees would be charged for the debt collection efforts, that Defendant would continue to telephone Plaintiff, and that Plaintiff would be taken to the "next tier." (*Id*., ¶ 13.)

On May 12, 2011, Plaintiff filed his Complaint seeking relief under 15 U.S.C. § 1692, *et seq.* (Fair Debt Collection Practices Act ("FDCPA")). (*Id.*) Plaintiff seeks $1,000 in statutory damages, costs, and reasonable attorney fees as permitted by 15 U.S.C. § 1692k. (*Id.* ¶¶ 15-16.)

Defendant was served with a copy of Plaintiff's Complaint on May 26, 2011. (Docket 4.) Pursuant to Federal Rule of Civil Procedure 12(a)(1)(a), Defendant had twenty-one days to answer Plaintiff's Complaint or file an appropriate Rule 12(b) motion. Thus, Defendant's answer or Rule 12(b) motion was due on or before June 17, 2011. To date, Defendant has filed no answer or responsive motion in this case.

On August 4, 2011, at Plaintiff's request, the Court's Clerk entered default against Defendant. (Docket 5, 6.) The Clerk's default stated that Plaintiff "shall have and recover of Virtuoso Sourcing Group, LLC such sum or sums as the Plaintiff shall prove to the Court." (*Id.*) On August 8, 2011, the Clerk filed on the Docket a certified mail return receipt card addressed to Defendant and signed by a Sonja M. Smith, presumably Defendant's agent, evidencing Defendant's receipt of the Clerk's default. (Docket 7.) On December 16, 2011, Plaintiff filed his motion for default judgment seeking $1,000 in statutory damages, $3,310 in attorney fees, and $410 for costs. (Docket 8.)

## II.  LEGAL STANDARDS

*A.  Federal Rule of Civil Procedure 55—Default Judgements*

Federal Rule of Civil Procedure 55 governs default judgments. The Rule provides in pertinent part:

(a) **Entering a Default**. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

2

    (b)    **Entering a Default Judgment**.

        (1)    *By the Clerk*. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

        (2)    *By the Court*. In all other cases, the party must apply to the court for a default judgment . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

            (A) conduct an accounting;
            (B) determine the amount of damages;
            (C) establish the truth of any allegation by evidence; or
            (D) investigate any other matter.

Fed. R. Civ. P. 55.

An action to enforce any liability under the FDCPA "may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The illegal debt collection practices are alleged to have occurred in Charleston, West Virginia in March and April 2011. Plaintiff's Complaint was filed on May 12, 2011. Accordingly, jurisdiction and venue are established.

"[T]rial judges are vested with discretion, which must be liberally exercised, in entering . . . [default] judgments and in providing relief therefrom." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir.1982). However, default judgment is available "when the adversary process has been halted

because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp.2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir.1980)).

A defaulting party admits the plaintiff's well-pleaded factual allegations in the complaint, in contrast to the allegations regarding damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir.2001). The party in default, however, is not held to admit conclusions of law. *Id*.

B.   *Fair Debt Collection Practices Act—15 U.S.C. §§ 1692d & 1692e*

Harassing and abusive debt collection practices are prohibited under 15 U.S.C. § 1692d. That statute provides in pertinent part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (5)   Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d(5).

Likewise, false and misleading debt collection practices are actionable under 15 U.S.C. § 1692e.  That statute provides in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (10)   The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10).

Generally, a debt collector may not communicate with a consumer at any unusual time or place. 15 U.S.C. § 1692c. The time period of 8:00 a.m. through 9:00 p.m. is presumptively a convenient time. *Id*.

Pursuant to 15 U.S.C. § 1692k(b), the court shall consider when determining the amount of liability the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the extent to which such noncompliance was intentional, among other relevant factors. Courts analyzing the FDCPA have held that "[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls." *Akalwadi v. Risk Mgmt. Alts, Inc.*, 336 F. Supp.2d 492 (D. Md. 2004); *see Udell v. Kansas Counselors, Inc.*, 313 F. Supp.2d 1135, 1143 (D. Kan. 2004) (finding that four calls over seven days by a debt collector without leaving a message did not amount to harassment); *Kuhn v. Account Control Tech., Inc.* 865 F. Supp. 1443, 1453 (D. Nev. 1994) (finding that six phone calls in a span of twenty-four minutes constituted harassment); *Bingham v. Collection Bureau, Inc.* 505 F. Supp. 864, 873 (D.N.D.1981) (holding that when a call was terminated and the collection agency called back immediately, that subsequent call alone could constitute harassment); *see also Kerr v. Dubowsky*, 71 F. App'x. 656, 657 (9th Cir. 2003) (affirming district court's dismissal of claim where complaint alleged calls from debt collector were "unwanted" but failed to allege facts that the calls were intended to harass, oppress, or abuse).

This Court, analyzing an analogous West Virginia debt collection practices statute [W. Va. Code § 46A-2-128(e)], found that the Defendant was liable where it, among other actions, called the Plaintiffs' home and cell numbers between the hours of 8:00 a.m. and 9:00 p.m. 861 times over a

period of 235 days. *Clements v. HSBC Auto Finance, Inc.*, 2011 WL 2976558 *4 (S.D. W. Va. July 21, 2011) (Berger, J.).

## III. DISCUSSION

Plaintiff's Complaint alleges that Defendant "constantly and continuously places calls to the Plaintiff seeking to collect an alleged debt." (Docket 1, ¶ 9.) Defendant placed calls two to three times a day to Plaintiff's home beginning March 31, 2011, and continuing through April 13, 2011. (*Id.*, "Exhibit A.") On April 9, 2011, Plaintiff called Defendant, asked it to stop calling, and advised Defendant's agent that he could not afford to make payments at that time. (*Id.*, ¶ 12.) Defendant's agent told Plaintiff the calls would continue and collection efforts would escalate. (*Id.*, ¶ 13.) Defendant telephoned Plaintiff five more times over the next few days. (*Id.*, "Exhibit A.") The last call occurred on April 13, 2011. (*Id.*)

Based on these allegations, which are taken as true in light of Defendant's failure to defend these claims in any way, the Court **FINDS** that Plaintiff's Complaint sufficiently states a claim that Defendant violated 15 U.S.C. § 1692d by making harassing phone calls. The Court, however, further **FINDS** that Plaintiff fails to sufficiently state a claim that Defendant violated 15 U.S.C. § 1692e by using false and deceptive means in attempting to collect a debt.

### A. *Harassing Telephone Calls Claim—15 U.S.C. § 1692d*

Based on the call log that is attached to Plaintiff's Complaint, Defendant first telephoned Plaintiff on March 31, 2011, and continued to make another nineteen telephone calls over the course of nine days, the last day being April 13, 2011. (Docket 1, "Exhibit A".) Defendant did not call Plaintiff at inconvenient times as all the calls were made well after 8:00 a.m. or well before 9:00 p.m. (*Id.*) On April 9, 2011, Plaintiff called Defendant and asked them to stop calling, to communicate

with him only in writing, and advised Defendant's agent that he could not afford to make payments on the debt that he owed. (Docket 1, ¶ 12.)  Defendant continued to telephone Plaintiff five more times over the next three days. (*Id.*)   Plaintiff alleges that Defendant acted with the intent to annoy, abuse, and harass Plaintiff.

Based on the foregoing allegations, Plaintiff's claim satisfies the elements of a cause of action under 15 U.S.C. § 1692d.  First, the allegations in the Complaint permit the Court to fairly conclude that Plaintiff is a consumer who owed a debt to a debt collector as those terms are defined within the FDCPA.  15 U.S.C. §§ 1692a(3), (5) & (6).  Second, by telephoning Plaintiff twenty times over the course of ten days and with the intent to harass, annoy, and abuse Plaintiff establishes a prima facie violation of 15 U.S.C. § 1692d.

      B.      *False and Misleading Conduct Claim—15 U.S.C. § 1692e*

Plaintiff states that during the conversation on April 9, 2011, when Plaintiff asked Defendant to stop calling him, Defendant's agent advised him that: 1) the original creditor would charge Plaintiff additional fees for using a collection agency; and 2) that Plaintiff would be "taken to the next tier."  Plaintiff states in conclusory fashion that these two assertions violate § 1692e(10). Absent from the Complaint are any facts demonstrating that these statements were false or deceptive. Accordingly, Plaintiff fails to state a claim upon which relief may be granted and this claim is **DISMISSED**.

C. *Damages and Attorney Fees—15 U.S.C. § 1692k*

Damages for actions brought by an individual are authorized for actual damage sustained and "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k.[1] The Court's determination of the amount of liability is guided by, "among other relevant factors," the following: the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. 15 U.S.C. § 1692k(b).

Section 1692k allows a plaintiff "in the case of any successful action" under the FDCPA to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The FDCPA provides for an award of a reasonable attorney fees "in all but the most unusual circumstances," and the determination of a "reasonable attorney's fee" is within the sound discretion of the district court. *See, e.g., Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628–29 (4th Cir. 1995). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983). The product of these variables is the lodestar figure. *See Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008) (stating that the lodestar figure provides an objective basis on which to make an initial estimate of the value of a lawyer's services.).

---

[1] The unit of additional damages under the FDCPA is $1,000 per action, not $1,000 per violation. *Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647, 650 (6th Cir. 1994); *Harper v. Better Business Services, Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992). In contrast, under the West Virginia Consumer Credit Protection Act, this Court has held that W. Va. Code § 46A-5-101(1) allows for multiple civil penalties for each telephone call made by a debt collector in violation of the statute. *Stover v. Fingerhut Direct Mktg., Inc.*, Civil Action No. 5:09-CV-00152, 2010 WL 1050426 (S.D.W. Va. Mar. 17, 2010) (Berger, J.).

In calculating this lodestar figure, a district court must apply the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), as modified by *Hensley*, 461 U.S. 436-37; *see Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting *Johnson* factors). The *Johnson* factors include: (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal services; (4) the attorney's opportunity costs in pursuing the litigation; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases. *See Daly v. Hill*, 790 F.2d 1071, 1075 n. 2 (4th Cir.1985).

Section 1692k does not, however, "mandate a fee award in the lodestar amount." *Carroll*, 53 F.3d at 629 (stating that when a plaintiff has achieved only partial or limited success, the district court, in calculating an appropriate fee award, may simply reduce the award to account for the limited success.) In assessing the reasonableness of fees and costs in the context of § 1692k, courts look to "the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees" under the civil rights statutes. *Carroll*, 53 F.3d at 629 (quoting *Graziano v. Harrison*, 950 F.2d 107, 113–14 (3d Cir. 1991). A district court should consider amount of damages awarded as compared to amount sought in determining appropriate fee award. *Id. (*quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (civil rights case)). If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436.

*1.     Statutory Damages*

Plaintiff has established that Defendant violated 15 U.S.C. § 1692d . Plaintiff has not alleged actual damages, but rather requests the maximum amount of damages permitted under the statute. (Docket 8 at 5.) Pursuant to 15 U.S.C. § 1692k(a)(2)(A), statutory damages up to $1,000 are permitted. Plaintiff has established that Defendant's agents telephoned him twenty times over the course of nine days. None of these calls, however, were made during inappropriate times. On three of these days, Defendant's agents placed three calls a day to Plaintiff; on the remaining seventeen days, Defendant called no more than once or twice. Plaintiff fails to state whether he answered the telephone when Defendant's agents called so it is impossible for the Court to infer whether Defendant called Plaintiff back after speaking with him or just attempted to contact him again after placing a call that was not answered. There are no allegations that Defendant's agents used obscene or abusive language. While Plaintiff's call log demonstrates that Defendant telephoned him five more times after Plaintiff instructed Defendant to stop telephoning him, Defendant's continued contacts, as alleged, are not particularly egregious. Accordingly, having considered the factors set forth in 15 U.S.C. § 1692k(b), the Court **FINDS** Plaintiff is entitled to statutory damages of $250.

*2.     Attorney Fees & Costs*

Plaintiff seeks $3,310 in attorney fees and $410 in costs of filing and serving the Complaint. In support of his claims for attorney fees, Plaintiff tenders affidavits from and biographies of three attorneys who worked on Plaintiff's case. (Docket 8-4.) Plaintiff also tenders a detailed time sheet in support of the attorney fees request. (Docket 8-3.) Finally, Plaintiff directs the Court's attention to the *United States Consumer Law Attorney Fee Survey Report*, 2010-2011, a national survey of attorney fees charged by consumer law attorneys. (Docket 8-2.)

The Court will utilize the *Johnson* factors to determine (1) the reasonable amount of hours and (2) the reasonable rate to be used in this case.

Based on Plaintiff's submissions, Plaintiff was represented by three attorneys who spent a total of 11.1 hours on the case. (Docket 8-3, 8-4.) An additional 4.2 hours are attributed to the work of a paralegal billed at an hourly rate of $125. (*Id.*) The most experienced attorney, Adam Krohn, has been practicing consumer law since 1995. (Docket 8-3, 8-4.) Mr. Krohn charged $350 per hour for his work in this case. (*Id.*) His bill for his services in this case is $35, representing his six-minute review of the file and discussion of the case with his co-counsel, Nicholas Bontrager. (*Id.*) Mr. Bontrager, who graduated from law school in 2007, claims extensive experience in FDCPA law. (*Id.*) Mr. Bontrager's stated hourly rate is $250. (*Id.*) Mr. Bontrager asserts he spent 9.9 hours on this case. (*Id.*) Finally, Michael Bailey, an attorney who was admitted to practice law in 2000, has maintained a general practice of law (which includes consumer law) for eleven years. Mr. Bailey billed 1.1 hour at a $250 hourly rate. (*Id.*) All told, the stated attorney fees sought are $3,310. (*Id.*) Based the time log Plaintiff submitted, the amount of time attributed to the tasks performed appears reasonable. Accordingly, considering the simplicity of the facts and applicable law, as well as the experience of counsel and the level of skill required to appropriately represent Plaintiff in this case, the Court **FINDS** that 15.30 hours of legal work to be a fair and reasonable amount.[2]

With regard to the reasonableness of the hourly rates charged, Plaintiff relies on the 2010-2011 United States Consumer Law Attorney Fee Survey Report.[3] (Docket 8-2.) West Virginia,

---

[2] Plaintiff's time log incorrectly states that the total amount of time spent is 13.50. The actual tally of all time entries, as noted in Plaintiff's motion for default judgment, is 15.30 hours.

[3] Plaintiff also directs the Court's attention to the "Laffey Matrix," a legal fee schedule that
(continued...)

along with Delaware, North Carolina, New Jersey, Pennsylvania, Virginia and the District of Columbia, are included in the Atlantic Region for this survey. (*Id.* at 12.) Based on this report, the average consumer law attorney hourly rate for an attorney with 3-5 years' experience is $234; with 6-10 years' experience is $338; with 11-15 years' experience is $329; and with 16-20 years' experience is $373. (*Id.*)

Multiplying the stated attorney work hours by the above-referenced hourly rates per level of experience, the Court concludes that the reasonable fee for: (1) Mr. Krohn's legal work is $37; (2) Mr. Bontrager's legal work is $2,317; (3) Mr. Bailey's legal work is $362; and (4) paralegal work is $525, for a total of $3,241.[4] The Court further finds that it is appropriate to reduce the amount of attorney fees in light of the Court's award of $250 damages, rather than the $1,000 Plaintiff requested. The Court **FINDS** that a strict proportional reduction of 50% is too great a reduction under the facts of this case; however, the Court **FINDS** that a reduction of 33%, or $1,080, is reasonable. This decision is also based in part on counsels' failure to adequately support the assertion that Defendant used false and deceptive means to collect a debt as well as the unexceptional quality of the drafting of what appears to be a partially boilerplate Complaint. Consequently, the attorney fees award is reduced to $2,411. The Court awards Plaintiff his costs of

---

[3](...continued)
is prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The Laffey Matrix sets forth suggested hourly rates for legal work done in the Washington D.C. area. The Court declines to use this source because the nation's capitol's legal market is not fairly comparable to the Charleston, West Virginia legal market.

[4] The Court finds these rates generous for the Charleston, West Virginia legal market, but in light of Defendant's failure to defend Plaintiff's claims, the Court does not find that they are unreasonable in this particular case. Also, aside from the Laffey Matrix, which states that the average hourly rate for a paralegal in 2011 was $161, Plaintiff offers no justification for the $125 fee charged for paralegal services. However, the Court does not find the $125 fee unreasonable.

filing and service of the Complaint in the amount of $410. Thus, the total amount awarded in statutory damages, attorney fees, and costs is $3,071.

*IV. CONCLUSION*

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's motion for default judgment insofar as it alleges a violation of 15 U.S.C. § 1692d and **DENIES IN PART** the motion insofar as it asserts a violation of 15 U.S.C. § 1692e(10) [Docket 8.] The Court awards Plaintiff $250 in statutory damages; $2,411 in attorney fees; and $410 in costs against Defendant, for a total of $3,071.

The Court **DISMISSES** this case from the Court's active docket. A separate Judgement Order is filed contemporaneous with this Memorandum Opinion.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 12, 2012

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE